May it please the Court, my name is Maria Genovese, and I represent the petitioner. I'd like to reserve two minutes for the rebuttal. It's Morales Apolinar. Is that correct? Correct. There are two points I'd like to make. Fernandez v. Gonzalez applies only to motions to reopen proceedings in which there has already been an unreviewable discretionary determination. In this case, the petitioner filed a motion to reconsider with the Board regarding her claim of ineffective assistance of counsel, which was first raised on direct appeal. Matter of OSG 24INN Decision 56, BIA 2006, the Board in that case specifically distinguishes between motions to reconsider and motions to reopen. And in that case, the Board stated that, quote, a motion to reconsider contested correctness of the original decision based on the previous factual record, as opposed to a motion to reopen, which seeks a new hearing based on new or previously unavailable evidence. In this case, the Court has jurisdiction over the denial of the motion to reconsider. And furthermore, Fernandez specifically states that an appellate court has jurisdiction to determine whether a petitioner was prejudiced by ineffective assistance of counsel. Well, they were represented by this gentleman by the name of Vellinati. Correct. And he represented the whole family. Correct. And he represented the grandmother, did he? And the mother. And the mother. And the daughter, who's here today. Correct. And he's no longer an attorney? Yes, he resigned. Resigned. Pending a number of complaints against him for ineffective assistance. He resigned because the State Bar Court issued a 100-page decision outlining all of his misdeeds. Have you read that? Yes, I am familiar with it. You are, huh? All right. And the grandmother, she had an early priority date for citizenship. Yes, Your Honor. She has been a permanent resident for 15 or so years at the time this case was. And the lawyer, Vellinati, he didn't follow through with that? Correct. And when she has an early priority date, what does that mean? That the time period between the application and the application's approval, if everything's in order, is a brief period? Yes, Your Honor, less than a year to become naturalized. And then her daughter, who is Ms. Morales' mother, would have been eligible for permanent residence. Correct. And if the mother was a permanent resident, she'd been a qualifying relative for hardship purposes. Correct. And she's a person who's permanently disabled. Correct, Your Honor. All right. And, in fact, the grandmother did naturalize after I took the case over, and the mother did become a permanent resident. The mother did become a permanent resident. Yes. Okay. So the mother is now a qualifying relative for hardship purposes. Correct. Yes, Your Honor. So with those changes, what have you done? I haven't filed another motion to reopen, Your Honor, because I did file a number of them. What? I did file a brief and a motion to reconsider, and I did submit all these documents prior previously, and the Board did not seem to be inclined to reopen. So you've made a motion to reopen? Not after the mother became a permanent resident. No, I haven't. But that's not really a changed circumstance that the Board would consider. I think changed country conditions are what the Board normally considers in some cases, but not in cancellation cases. It's a different regulation. I know there's a specific regulation that allows the Board to reopen on motion that relates to changed country circumstances. Correct. Is there a different regulation that applies when it's a situation like this where the mother becomes an LPR? No, Your Honor, because, I mean, I don't believe so, because it's the same discretionary relief that we would be seeking, which is cancellation, but just new hardship factors. And there's a time limit for motions to reopen, 90 days, and that has already long lapsed. I just don't understand your answer. What did you just say? What I was answering was that there is no basis for a motion to reopen. Because the regulation that would allow this as a basis for moving is less favorable to petitioners than one involving changed country circumstances. Is that right? Actually, I don't believe that there is a regulation that allows the filing of a motion to reopen based on changed conditions. Your experience as an immigration lawyer is that they're not looked upon with favor by the Board? Yes, Your Honor, unless it's filed within the 90 days statutory limit for motions to reopen. And did the mother's achieving LPR status occur outside those 90 days? Yes, Your Honor. Thank you. All right. Thanks. May it please the Court, Joan Smiley from the Department of Justice here on behalf of the Attorney General. There are two issues before the Court. The first is the Board's denial of the motion to reconsider, which was based on the petitioner's failure to establish the requisite continuous physical hardship and the failure, excuse me, the continuous physical presence and the failure to establish exceptional and extremely unusual hardship, which is required under the statute. Here, the Board looked at the record before. What about the incompetence of counsel here? In order to make out a successful and effective assistance of counsel claim, there are certain requirements. The first is that a motion for such relief should be supported by an alien's affidavit setting forth the agreement between the attorney and themselves and the action that the attorney did or did not take. Also, the second requirement is that the counsel be informed of the allegations against them and given an opportunity to respond. That's been reiterated. I know, but what about a situation where presumably all the IJs know about this guy, Vellinati, and know that he's crooked, know that he takes money from people and doesn't perform services, know that he acts as an appearance lawyer for notarios that do the same, know that almost every day that an immigration court is open, he has anywhere from six to ten cases every single day of the week that they're open. They know this person. They know what he does. The list of his misdeeds took just a partial list, took 100 pages with a California state bar. Well, as this Court recognized in Rias v. Ashcroft. I have to recognize anything. Just answer that question. There needs to be a mechanism for an attorney to respond to the allegations while. He's already responded. When they sent him for five years, he just quit the bar, left town. But in this case, the evidence is such that, first of all, she was represented at the hearings by two different attorneys. Yeah, they're all appearance attorneys. And aside from being represented at both merits hearings, the attorneys who represented her applied for asylum on her behalf. They applied for cancellation of removal. They applied for voluntary departure. Well, that should alert these IJs as to what's going on, because they apply for asylum from Mexico. We know that that's not going to get them anywhere. That's a game that these people play. There were no missed deadlines. There were no mandatory deadlines for reopening or petitioning for review that went unmet. So your argument is even if we waived, even if the Lizada requirements aren't complied with, in any event, if you reach the merits, there's no prejudice from any incompetence of counsel. Is that your position? That's correct, Your Honor. One of her claims is that one of the attorney's assistants told her that she couldn't submit documents unless they were in English. Well, this didn't bias her claim because the relevant regulation, 8 CFR 1003.33, requires that foreign language documents be translated. So there was no bias there in that the Spanish language documents that she wanted to submit and, in fact, did submit the second time before the Board couldn't be considered without an English translation. Who's responsible for the translation? Her representatives. Didn't do it. Didn't do it. Well, we don't know if the, I think the facts of this case point up the importance of the Lizada requirements because we don't know. Our case law has made clear that absolute adherence to Lizada is not always required, right? That's correct. Particularly, let me finish, please. I'm sorry. Particularly when compliance with some of its elements would be futile, correct? That is correct. That is correct. And here, what the government points to is two requirements, two prongs of Lizada. One is the failure to notify this lawyer, and the second, the failure to file a bar complaint. Is that right? Well, the failure to file a bar complaint was explained in that she says in her brief. So the government's relying upon the failure to notify the lawyer? Failure to submit a sufficient affidavit setting forth the agreement of what the attorney was to do. It was already before the state bar, you know. But that few days after this matter was heard is when their 100-page decision came out. Every immigration judge in downtown L.A. knows about this guy, knows what was happening. And so you wanted these people to file a complaint? Is that what you're saying? The point is, in this case, there's no obvious case of ineffective assistance. No, the point is, the point is, and I hate to say this, and I'll probably get the heat. You know, the immigration judges know that this guy is rotten. They know about the notorios. They know about the whole system. They know that this barred attorneys can practice before the immigration courts. They know all this. So the government is an aider and a better in all of these cruelties that go on and all these misdeeds that go on. That's what the government is. The government knows what's going on, doesn't do anything about it. Knows who these people are. So do you know that these things go on? I'm familiar with the allegations that have been made against him. How could the BIA know it? I'm familiar with the allegations. However, in this case, we don't know what his response is to these charges, whether it's true or it's not true that his office did these things. I'm sorry. I didn't interrupt you. It is correct that both in response to the state bar's complaint against Valinati, and in response to the final order of discipline by the U.S. Department of Justice, which suspended him for a parallel five years, that Valinati did not respond to either complaint. Are you talking about complaints in this case or complaints that have been made? Complaints generally. The state bar's complaint involved much more than just this client. It involved a whole series of clients. And Valinati did not respond. And I'm looking at the October 8, 2003 order involving Valinati, and it specifically recites that he was served with their allegations, DOJ's allegations, and did not respond. Right. So doesn't that lead logically to the conclusion that notifying him would have been futile? No, because under the law that's applicable, the Rias case, Ray, as well as Granados, Asakura, the basis for this requirement is to evaluate. In other words, there are many frivolous claims or non-meritorious ones that are made, and there needs to be a mechanism for the board to evaluate whether, for instance, the petitioner is making certain claims of what a secretary in the office told her. It would be very helpful to have a response for the secretary, for instance, to say, yes, I did tell her or I didn't tell her those things. Of course, to Judge Hawkins' question, we understand the rationale is that in this case, this attorney was highly unlikely to have cooperated or done any response. And, in fact, there is evidence that the BIA had in its own records to show that that was his behavior in these other cases with his monumental claims of a whole sequence of alleged ineffective assistance. So why would this case suddenly he would feel responsible and interested in responding to a complaint by this petitioner? Well, it's possible, for instance, that the other individuals that the petitioner was represented by, Ms. O, I believe, O-H, and another secretary in the firm that she indicates told her certain things that perhaps a response could have been filed on their behalf. But the fact is, under Section 240A of the Act, petitioner clearly lacked the requisite hardship, the requisite physical presence, notwithstanding the claims that she's making regarding her counsel's behavior. And saying it doesn't make it so, no matter what the allegation is. If she lacks these things, it's fatal. In other words, we don't really care whether someone is effectively represented by attorneys. We don't really care whether all this corruption is known by the Justice Department and the immigration court and its judges. We don't care about all that. That goes by the boards. What we look at is this woman and her family have an impossible hurdle, so the rest of it is just to be brushed aside. No, we do care. That's what you're saying. No, that's not what I'm saying. That's what you're saying. The Department of Justice moved against this attorney, so the government does care. Well, the Department of Justice didn't move against him. The State Bar of California moved against him. But the Department of Justice allows this bar of attorneys to practice before the immigration court. Is that true? Not that I'm — there are certain requirements in the regs for who may or may not practice. Your Honor, what I would like to say — The Justice has known about this guy for years and hasn't done anything. In closing, on the facts of this case, there's no obvious case of ineffective assistance of counsel. While he may have been ineffective in other cases — Well, what about, what about, what about just he had the grandmother's case? He could have gotten her citizenship. He never followed through on that. I think he got paid for that. If that would have happened, then the mother would have been a permanent resident. If that would have happened, then the daughter could have used her as a qualifying relative for hardship. And the mother was permanently disabled. The mother's visa position in the record indicates that she was not eligible. That's what the board had before him. Yeah, but if he carried through, then she would have been in a position. The mother would have been eligible. We don't know that, Your Honor. In any event, we would ask that the court uphold the board's denial of the motion to reconsider, as well as the underlying denial of cancellation of removal. Thank you. In closing, I just wanted to point out that the Petitioner was prevented from reasonably presenting her case before the immigration judge due to the ineffective assistance of Mr. Vallinati, and her case could have been made a lot stronger were it not for his negligence. Thank you. The matter is submitted. The next case is Huerto Ramos v. Gonzalez.
judges: Pregerson, Hawkins, Fisher